UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AFTON DANIELLE SWALLS, | No.: 4:15-CV-5064-EFS |
| Plaintiff, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR ADDITIONAL PROCEEDINGS** |
| v. | |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Both parties in this social-security appeal seek summary judgment in their favor. ECF Nos. 12 & 22. Plaintiff Afton Danielle Swalls appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 12. Ms. Swalls contends the ALJ erred because he 1) failed to fully accept the opinions of her medical providers, Dr. Sergio Flores, Dr. Jan Kouzes, Dr. Laurie Zimmerman, and Ms. T. Tanninen, 2) improperly rejected Ms. Swalls' testimony regarding the severity and limiting effects of her impairments, and 3) the ALJ failed to include all of Ms. Swalls' limitations into the hypothetical posed to the vocational expert. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision that Mr. Swalls is capable of performing substantial gainful activity in a field for which a significant number of jobs exist in the national economy. For the reasons set forth below, the Court remands this matter to require the ALJ to fully consider Dr. Zimmerman's, Dr. Kouzes', and Ms. Tanninen's

ORDER - 1

opinions regarding mental-health conditions and Ms. Swalls' testimony regarding the severity and limiting effects of her mental-health conditions. Therefore, the Court grants in part Ms. Swalls' motion and denies the Commissioner's motion.

A.    **Statement of Facts[1]**

At the age of 19, Ms. Swalls suffered serious physical injuries in a car accident. Transcript of admin. hrg. ("Tr.") at 255 & 443-466. Ms. Swalls had a pelvic rod inserted into her right iliac/pelvic bone, screws placed in the medial compartment of her left foot, and her left orbit and jaw reconstructed. Tr. at 450-53. She also suffered rib fractures, facial swelling, ankle injuries, and loss of consciousness. *Id*. As a result of these injuries, Ms. Swalls continues to have lower back, tailbone, pelvis, and ankle pain. Tr. at 94. Ms. Swalls reports that her pain is most relieved by lying down. Tr. at 95.

Prior to the accident, Ms. Swalls, who has a GED, worked as a child-care provider. Tr. at 91 & 245. Since the accident, Ms. Swalls has not been employed. She cares for her daughter, whom was born in May 2013.

When she has had health insurance, Ms. Swalls has sought pain management through medication to relieve the pain experienced because of the injuries suffered in the car accident. However, Ms. Swalls has not done physical therapy since 2003. Pain management has been provided by providers in Yakima, Spokane, and Tri-Cities. Michael Urakawa, PA-C, who

---

[1]    The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

ORDER - 2

is based in Yakima, treated Ms. Swalls in the winter and spring of 2010 for back and ankle pain; Mr. Urakawa's notes indicate that Ms. Swalls reported she was riding, grooming, and exercising her race horses. Tr. at 419.

Then in June 2010, Dr. Sergio Flores evaluated Ms. Swalls and determined based on her reported activity and pain that she was unable to work and that she needed medical assistance with her pain and psychiatric assistance; Dr. Flores recommended that she be re-evaluated in six to twelve months. Tr. at 412-14.

Ms. Swalls also sought medication to treat anxiety and depression. Since at least 2010, Dr. Zimmerman treated Ms. Swalls' mental-health conditions. Dr. Zimmerman diagnosed Ms. Swalls with:

- major depressive disorder, recurrent,
- anxiety disorder (not otherwise specified),
- posttraumatic stress disorder,
- panic and social phobia,
- methamphetamine dependence in early remission,
- cognitive disorder (not otherwise specified),
- status post-traumatic brain injury,
- possible attention deficit hyperactivity disorder (not otherwise specified),
- chronic pain, and
- Hepatitis C.

Tr. 288 & 291. In July 2010, Dr. Zimmerman noted that Ms. Swalls was depressed and anxious although she was taking her anti-depressant medication on a regular basis. Tr. at 289-90.

Two months later, Ms. Swalls had a MRI of her lumbar that revealed mild disc bulging at the L3/L4 without nerve root impingement or stenosis, and a posterior annular fissure near the midline at L5/S1, with no stenosis

ORDER - 3

observed.   Tr. at 312. Then in November 2010, Ms. Swalls was treated at Tri-Cities Community Health for low back and ankle pain. Tr. at 305.

In January 2011, Dr. Zimmerman prescribed Ms. Swalls a trial of Pristiq and Valium to assist with her mental-health conditions. Tr. at 288. That same month, Ms. Swalls visited PA-C Urakawa, who noted that Ms. Swalls reported that the medication was controlling her pain. Tr. at 328.

The next month, Dr. Jan Kouzes, Ed.D. completed a psychological evaluation for the Department of Social and Health Services. Tr. at 294. Dr. Kouzes marked that Ms. Swalls suffers from moderate to marked depression. Tr. at 295. Dr. Kouzes opined that Ms. Swalls was "depressed and unlikely to be able to work until she is more stable with her mental health. She notes anxiety and depression sx that appear to be severe." Tr. at 297. That same month Ms. Swalls visited PA-C Urakawa, who noted that Ms. Swalls was tearful because of a panic attack she experienced that day and that her pain was a 4 out of 10. Two months later, PA-C Urakawa noted that Ms. Swalls' reported pain was 3 out of 10 and that she was upbeat. Tr. at 322

A May 2011 medical record indicated that Ms. Swalls was anxious and depressed and that counseling would be of benefit. Tr. at 304. The next month, PA-C Urakawa noted that Ms. Swalls had been exercising, she registered for dental-assistant schooling, and her pain was under control. Tr. at 319.

In August 2011, Ms. Swalls was evaluated by Dr. Mary Murphy, who diagnosed her with lumbalgia, chronic pain syndrome, and posttraumatic stress disorder. Tr. at 316-17. And the next month, Ms. Swalls sought treatment for her pain. Tr. at 301. The following month, Dr. Daniel Kwon

ORDER - 4

assessed Ms. Swalls with low-back and bilateral-ankle pain and posttraumatic stress disorder. Tr. at 314-15.

In December 2011, Ms. Swalls' mother completed a third-party function report, indicating that she assists Ms. Swalls with cleaning her apartment and meals because Ms. Swalls suffers from lack of energy, ankle and back pain, and double vision in her right eye. Tr. at 253-61.

Medical records in 2012 indicate that Ms. Swalls began self-mutilating herself; this conduct purportedly began because Ms. Swalls was no longer taking mental-health medication as her health insurance had lapsed. Tr. at 336-43 & 354. In April 2012, Dr. Penny Stringer treated Ms. Swalls for anxiety and chronic pain; she prescribed Celexa and clonidine and recommended that Ms. Swalls see a mental-health counselor. Tr. at 357. Later that month, Ms. Swalls was treated for MRSA. Tr. at 361 & 394.

Also in April, Ms. Swalls began traveling to Spokane to be treated at Inland Neurosurgery and Spine (IN&S) for her back, pelvis, and ankle pain. Tr. at 535 & 540-42. A mental-health evaluation the next month indicates that Ms. Swalls reported that she stopped receiving mental-health treatment in December 2010 as she lost her medical coverage and she was currently experiencing no energy or motivation and that she was depressed; the evaluator recommended that Ms. Swalls begin mental-health counseling and prescribed medication to treat the diagnosed mental-health conditions. Tr. at 395-97. There is no indication in the record that Ms. Swalls participated in mental-health counseling. Tr. at 400.

An MRI in July 2012 revealed that Ms. Swalls had a mild disc bulge at the L3-4 disc and mild facet arthrosis. Tr. at 526. That month she also

visited IN&S for pain in her tailbone, buttock, and ankle due to increased walking and lifting. Tr. at 527.

Ms. Swalls returned to Dr. Zimmerman in August 2012, reporting that she was doing better mentally but that she experienced anxiety and panic attacks if she went out in public. Tr. 405. Dr. Zimmerman prescribed Valium. Tr. at 405.

In August and September 2012, Ms. Swalls received a sacral coccygeal joint injection at IN&S, and reported that the methadone and the injection improved her ability to function and lowered her pain. Tr. at 518.

Ms. Swalls learned she was pregnant in the fall of 2012. During the last trimester of her pregnancy, Ms. Swalls reported increased pain. Tr. at 490, 493-510.

In mid-April 2013, Dr. Zimmerman evaluated Ms. Swalls. Tr. at 404. Ms. Swalls reported that she was not taking her mental-health medication as she was pregnant and was having trouble with focus, fatigue, depression, and anxiety. Dr. Zimmerman reported, "Mood is mildly depressed and anxious. Speech is normal in rate and pattern and goal directed. Her affect was appropriate. There is no evidence of psychosis. There is no suicidal or homicidal ideation. Insight and judgment are fair." *Id.*

Four days following this appointment. Dr. Zimmerman completed a Mental Medical Source Statement. Tr. at 366-68. Dr. Zimmerman noted that Ms. Swalls was markedly limited in the areas of: ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to complete a normal work-day and workweek without

ORDER - 6

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to accept instructions and respond appropriately to criticism from supervisors. *Id.*

Ms. Swalls had her daughter by C-section on May 1, 2013. Two weeks later she visited IN&S in Spokane, seeking to increase the amount of methadone to help with pain. Tr. at 487. Also later in May 2013, Dr. Zimmerman noted that Ms. Swalls reported the Valium was helping with her panic attacks and her focus, and Dr. Zimmerman also prescribed Adderall XR to help Ms. Swalls' ability to focus. Tr. at 403.

Ms. Swalls had her methadone refilled in June, commenting that she had more pain in her pelvis due to carrying and lifting her 6-week old baby and that her mother helps her out with some household chores. Tr. at 483.

In July, Ms. Swalls was treated for pain management, Tr. at 371, and for her depression and anxiety, Tr. at 402. She also began attending chemical-dependency classes. In August 2013, Ms. Swalls requested more methadone to relieve her back pain due to carrying her baby. Tr. at 479.

In September 2013, Dr. Zimmerman evaluated Ms. Swalls and noted that Ms. Swalls, who appeared somewhat anxious and discouraged, indicated that she was doing well and attending chemical-dependency classes. Tr. at 401. Dr. Zimmerman continued Ms. Swalls on Valium and Pristiq. *Id.* Ms. Swalls also had her pain management checked at IN&S; the doctor noted that Ms. Swalls did not exhibit any aberrant behavior. Tr. at 472-74.

In October 2013, a doctor at IN&S evaluated Ms. Swalls for pain. Ms. Swalls reported more pain in her tailbone region but that she is able

ORDER - 7

to care for her baby. Tr. at 468-69. She was continued on methadone. Tr. at 469.

The next month, T.K. Tanninen, LMHC, completed a psychological evaluation, concluding that Ms. Swalls is unable to "adapt outside her home. We have her on a 3 yr rehabilitation plan but then after that we'll have [indecipherable] due to brain trauma." Tr. at 546. Ms. Tanninen opined that Ms. Swalls would miss on average three days of work per month and that it was more probable than not that Ms. Swalls would miss work due to mental impairments. *Id.*

At the November 2013 administrative hearing, Ms. Swalls testified. She stated that was living in a ground-floor apartment with her six-month daughter. Tr. at 90-91.

**B.    Procedural History**

Ms. Swalls, through counsel, applied for supplemental security income on October 26, 2011.[2] Tr. 13, 151, & 179-80. She initially alleged an onset date of March 2, 2002; at the administrative hearing, the onset date of disability was changed to October 26, 2011. Tr. at 13 & 88.

Ms. Swalls' application was denied initially and upon reconsideration. Tr. at 162, 178, 181, & 186. At the November 2013 administrative hearing before ALJ James Sherry, Ms. Swalls and vocational expert Daniel McKinney, Sr. testified. Tr. at 82-118. In a February 2014 written decision, the ALJ determined that Ms. Swalls had not engaged in substantial gainful activity and she had severe impairments that prevented

_____

[2] Ms. Swalls had previously filed applications for supplemental security income, which had also been denied. Tr. at 39-40.

ORDER - 8

her from performing past relevant work: status post-accident injuries, including left ankle, left sacral, and pelvic factures; coccydynia; sacroiliac joint dysfunction; lumbalgia; hepatitis C; traumatic brain injury with resultant cognitive disorder; depression; panic/anxiety disorder; personality disorder; and substance abuse. Tr. at 16. The ALJ proceeded to find that Mr. Swalls' impairments do not meet or medically equal the severity of any listed impairments. Tr. at 18. The ALJ determined that Mr. Swalls has the residual functional capacity to perform a limited range of light work: work that does not involve lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally; standing and/or walking for more than a total of 2 hours during an 8-hour workday with normal breaks, more than occasional balancing, stooping, kneeling, crouching, or crawling, more than occasional climbing of ramps or stairs, any climbing of ladders, ropes, or scaffolds; any exposure to hazards; or the performance of more than lower-level-semi-skilled tasks that do not require more than casual, superficial contact with the general public. Tr. at 19. Based on this assessment, which was presented to the vocational expert, the ALJ concluded Ms. Swalls can perform other work existing in significant numbers in the national economy, such as small products assembler, grader/sorter, and hand packager or packing inspector, and thus she is not considered disabled. Tr. at 25-26.

The Appeals Council denied review of the ALJ's decision. Tr. at 9. Thereafter, Ms. Swalls filed this lawsuit, appealing the ALJ's decision. ECF No. 3. The parties then filed the instant summary-judgment motions. ECF Nos. 12 & 14.

C.    **Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work she has performed in the past. This includes determining

the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of her age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if she establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**D.    Standard of Review**

On review, the court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir.

ORDER - 11

1980)). The court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**E.  Analysis**

The Court addresses each of Ms. Swalls' challenges to the ALJ's decision.

**1.  Medical Providers**

Ms. Swalls contends the ALJ erred by rejecting the opinions of medical providers Dr. Zimmerman (treating provider), Dr. Flores (examining provider), Dr. Kouzes (non-examining provider), and Ms. Tanninen

ORDER – 12

(examining provider), in regard to her mental-health and physical conditions.

As to Dr. Zimmerman, Ms. Swalls contends the ALJ improperly rejected her opinions without explanation. The Court agrees in part. Because Dr. Zimmerman is a treating physician, the ALJ was to give more weight to her opinion than to the opinion of doctors who do not treat Ms. Swalls unless the ALJ provided "clear and convincing" specific and legitimate reasons supported by substantial evidence for rejecting Dr. Zimmerman's opinions. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ detailed much information regarding Ms. Swalls' mental-health conditions and her appearances and presentation at appointments—information that, at least in part, conflicts with Dr. Zimmerman's conclusions in her April 2013 Mental Medical Source Statement, wherein Dr. Zimmerman concludes that Ms. Swalls was markedly limited in the areas of: ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to accept instructions and respond appropriately to criticism from supervisors. Tr. at 366-68. Because Dr. Zimmerman was a treating physician, the ALJ was required to not only provide legitimate reasons supported by substantial evidence in the record for rejecting Dr. Zimmerman's ultimate conclusions but also *specific* reasons for rejecting Dr. Zimmerman's ultimate conclusions. The ALJ failed to mention Dr.

Zimmerman in his opinion, let alone provide specific reasons supported by substantial evidence for rejecting Dr. Zimmerman's conclusions that Ms. Swalls was markedly limited in the listed abilities because of her mental-health conditions.

Although the ALJ provided specific reasons for giving little weight to the mental-health opinions of Dr. Kouzes and Ms. Tanninen (as to severity of conditions), the Court finds the ALJ must reconsider these reasons after fully considering Dr. Zimmerman's opinions. The Court declines to enter an award of benefits as requested by Ms. Swalls at this time. Instead, the Court defers to the ALJ to consider, based on the entire medical record, whether Ms. Swalls' mental-health conditions, when treated (albeit recognizing that Ms. Swalls may experience fluctuations in her mental-health conditions even when treated), affect her work activities to the extent opined by Dr. Zimmerman, Dr. Kouzes, and Ms. Tanninen. *See Scott v. Astrue*, 647 F.3d 734 (9th Cir. 2011) (addressing the fluctuating nature of some mental-health impairments).

As to Dr. Flores, the ALJ discounted his opinion that Ms. Swalls is severely physically limited, i.e., unable to lift at least 2 pounds or unable to stand and/or walk, because he only evaluated Ms. Swalls once and this limited exposure was insufficient to provide a detailed, longitudinal picture of Ms. Swalls' physical impairments. Tr. at 23. The Court finds these explanations to be clear and convincing reasons for rejecting Dr. Flores' opinions. The ALJ's conclusion's regarding Ms. Swalls' physical limitations are consistent with the substantial evidence in the record, including Ms. Swalls' physical activities, lack of physical therapy since 2003, and MRI results.

ORDER - 14

Accordingly, after a review of the medical records and the hearing testimony, the Court remands this matter to ALJ to fully consider the evidence pertaining to Ms. Swalls' mental-health conditions. In this regard, the Court grants Ms. Swalls' motion and denies the Commissioner's motion. But as to Ms. Swalls' physical conditions, the Court denies Ms. Swalls' motion and grants the Commissioner's motion.

### 2. Ms. Swalls' Credibility

A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Step one requires the ALJ to determine whether the claimant presented objective medical evidence of an impairment, which could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of the pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of his symptoms unless the ALJ provides specific, clear, and convincing reasons for rejecting the claimant's symptom-severity testimony. *Id.* (recognizing that the clear-and-convincing standard is a demanding standard).

Ms. Swalls argues the ALJ failed to provide specific, clear, and convincing reasons for discrediting her testimony regarding the severity and limiting effects of her impairments. The Court finds, at step two of the analysis, the ALJ provided specific, clear, and convincing reasons

for discrediting Ms. Swalls' testimony regarding the severity and limiting effects of her physical impairments, i.e., her hearing testimony on this point was "contradicted by statements she made to treating medical providers about her pain," Tr. at 20, inconsistent with her lifestyle and course of treatment, Tr. at 21, and the opinions of the State agency medical consultants, Tr. at 24.

However, the ALJ must consider Ms. Swalls' reports concerning the limiting effects of her mental-health conditions in light of Dr. Zimmerman's conclusions and the remaining record. *See, e.g., Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (recognizing the ALJ must consider the claimant's mental-health impairment in regard to his ability to seek and follow-through with rehabilitation). In these regards, the Court grants in part and denies in part both summary-judgment motions.

**C.    Conclusion**

For the above-given reasons, the Court remands this matter for additional proceedings. Although the Court finds the ALJ erred, it is not clear from the record, as it currently stands, whether Ms. Swalls' mental-health conditions prevent her from performing substantial gainful employment. Further development is necessary for a proper determination.

The ALJ shall consider Dr. Zimmerman's opinions in light of the entire record, including Dr. Kouzes' and Ms. Tanninen's opinions and Ms. Swalls' self-reports, to determine Ms. Swalls' residual functional capacity. The ALJ shall direct Ms. Swalls to undergo a new consultative psychological examination, and can determine whether presentation of further evidence would be helpful in light of the passage of time since the November 2013 administrative hearing. If warranted, the ALJ shall

elicit the testimony of a medical expert to assist the ALJ in formulating a new RFC determination. The ALJ shall present the new RFC assessment to a vocational expert to help determine whether Mr. Swalls is capable of performing any work existing in sufficient numbers in the national economy.

Accordingly, **IT IS HEREBY ORDERED:**

1.   Ms. Swalls' Motion for Summary Judgment, **ECF No. 12**, is **GRANTED IN PART** (remand) **and DENIED IN PART** (no immediate award of benefits)**.**

2.   The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **DENIED.**

3.   This matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.   The Clerk's Office is to enter **Judgment** in favor of Ms. Swalls.

5.   An application for attorney fees may be filed by separate motion by Ms. Swalls.

6.   The case shall be **CLOSED.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to counsel and ALJ James Sherry.

**DATED** this 19th day of February 2016.


_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge


Q:\EFS\Civil\2015\5064.social.sec.lc1.docx

ORDER – 17